UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUKUI TECH, INC., et al.,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>INTELLIGENT SOLUTIONS, LLC, et al.,<br><br>　　　　　Defendants. | Case No. 23-cv-00991-PCP<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Dkt. No. 23 |

Defendants Intelligent Solutions, LLC and Joseph Sarro move to dismiss or stay the lawsuit brought against them by plaintiffs Hukui Tech, Inc., Hukui Technology, Inc., and Hukui Bio Co., LTD. For the reasons that follow, the Court denies the motion.

## BACKGROUND

Hukui Tech is a California-based corporation that provides import-export and distribution services in the medical devices industry. Intelligent Solutions is a Nevada-based company that provides sales lead and distribution services. Co-Diagnostics Inc. (CDX) is a Utah-based medical devices company that has developed COVID-19 diagnostic tests.

This dispute arises from Hukui Tech's agreement with CDX to distribute COVID-19 tests. Hukui Tech and CDX entered into that distribution agreement in March 2020, early in the global pandemic. The agreement authorized Hukui Tech "and its subsidiaries to sell and distribute" CDX's COVID-19 tests. Dkt. No. 1-1, at 2.

Hukui Tech thereafter entered into a customer referral agreement with Intelligent Solutions, pursuant to which Intelligent Solutions would provide sales lead services for Hukui Tech's distribution of CDX's COVID-19 tests. That agreement could only be terminated "by either Party upon 30 days written notice to the other party." Dkt. No. 1-3, at 3.

In CDX's view, its agreement with Hukui Tech required Hukui Tech to be the sole distributor of its COVID-19 tests and to refrain from contracting with other sub-distributors like Intelligent Solutions. Dkt. No. 24, at 6. CDX sued Hukui Tech in Utah state court in April 2021 seeking a declaration that it no longer had any contractual relationship with Hukui Tech. By that time, CDX had already begun distributing its tests directly through Intelligent Solutions. CDX argued that Hukui Tech had breached its distribution agreement by contracting with Intelligent Solutions, and that CDX was not liable to pay Hukui Tech for the COVID-19 tests that CDX had sold thereafter. In response to CDX's lawsuit, Hukui Tech filed a countercomplaint alleging that CDX had breached its agreement with Hukui Tech by prematurely terminating their business relationship. Hukui Tech alleged that at least 750,000 COVID-19 tests were sold by CDX to Intelligent Solutions for $7 each rather than to Hukui Tech for $6 each (per the distribution agreement). Hukui Tech allegedly suffered $750,000 in damages due to CDX's breach of the agreement.

In March 2023, Hukui Tech filed this federal lawsuit alleging 10 contract-related claims against Intelligent Solutions. Hukui Tech alleges that by directly distributing COVID-19 tests for CDX, Intelligent Solutions unlawfully increased the profits earned by both Intelligent Solutions and CDX at Hukui Tech's expense. Specifically, Hukui Tech argues that Intelligent Solutions breached its agreement with Hukui Tech by not providing termination notice, unlawfully dealt with CDX despite being Hukui Tech's competitor, and interfered with Hukui Tech's initial agreement with CDX. Hukui Tech alleges that 2.3 million COVID-19 tests were ultimately sold through the partnership between CDX and Intelligent Solutions. Hukui Tech seeks $2.3 million in damages from Intelligent Solutions.

Intelligent Solutions now moves to dismiss or stay Hukui Tech's federal lawsuit in light of the pending proceedings between Hukui Tech and CDX in Utah state court.

## ANALYSIS

Where the subject matter of a federal case is also being litigated in ongoing state proceedings, the doctrine of *Colorado River* abstention sometimes permits a federal court to decline to exercise jurisdiction based on considerations of "[w]ise judicial administration, [the]

1 conservation of judicial resources, and comprehensive disposition of litigation." *Colorado River*
2 *Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). In the Ninth Circuit, several
3 factors are considered in deciding whether to abstain from a case under *Colorado River*, including:
4 (1) which court first assumed jurisdiction over the res in dispute; (2) the relative convenience of
5 the forums; (3) the need to avoid piecemeal litigation; (4) the order in which the state and federal
6 actions were filed; (5) whether state or federal law controls; (6) whether the state proceeding is
7 adequate to protect the parties' rights; and (7) whether the federal court proceeding is an instance
8 of forum shopping. *Id.* (laying out the first four factors); *Moses H. Cone Mem'l Hosp. v. Mercury*
9 *Constr. Corp.*, 460 U.S. 1, 25–26 (1983) (adding the fifth and sixth factors); *American Int'l*
10 *Underwriters (Philippines), Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1259 (9th Cir. 1988)
11 (adding the final factor). "No one factor is necessarily determinative." *Colorado River*, 424 U.S. at
12 818. Rather, "[t]he decision whether to stay or dismiss a federal action on grounds of wise judicial
13 administration does not rest on a mechanical checklist, but on a careful balancing of the important
14 factors." *Moses Cone*, 460 U.S. at 2.

15     On balance, the *Colorado River* factors do not support abstention in this case.

16     First, since the disputes in both this lawsuit and the Utah state court lawsuit involve only
17 monetary obligations arising from contractual agreements (as opposed to property), the Utah state
18 court has not assumed jurisdiction over any res. *American Int'l Underwriters*, 843 F.2d at 1258
19 ("[M]oney … is not the sort of tangible physical property referred to in *Colorado River*."); *see*
20 *also Travelers Indem. Co. v. Madonna*, 914 F.2d 1364, 1368 (9th Cir. 1990) (finding this factor to
21 be "irrelevant to the *Colorado River* determination" in a case involving the recovery of unpaid
22 insurance premiums).

23     Second, the convenience of the parties does not favor one forum over the other. The
24 California federal forum is more convenient than the Utah state forum for California-based Hukui
25 Tech, while the Utah state forum is more convenient for Utah-based CDX than the California
26 federal forum. And neither forum is particularly convenient for Nevada-based Intelligent
27 Solutions.

28     Third, because the state and federal actions involve distinct contracts between different

3

parties, abstention would not prevent piecemeal litigation. The state court litigation between Hukui Tech and CDX will determine those parties' rights under their distribution agreement, while this federal court litigation will determine Hukui Tech and Intelligent Solutions' rights under their customer referral agreement. These lawsuits can run in parallel without necessarily resulting in inconsistent judgments. For example, the Utah state court could either find that CDX breached its contract with Hukui Tech and award Hukui Tech up to $750,000 in damages or find that there was no contractual relationship at all. Regardless of that outcome, this Court could find either that Intelligent Solutions breached its contract with Hukui Tech and owes up to $2.3 million in damages or that Intelligent Solutions did not. While the overlapping facts at issue may result in some duplication, "[a] general preference for avoiding piecemeal litigation is insufficient to warrant abstention." *Seneca Insurance Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017). Rather, *Colorado River* abstention is appropriate where the pending proceedings "*inevitably* involve the possibility of conflicting results, piecemeal litigation, and some duplication of judicial efforts." *Id.* (emphasis added). Given that the outcomes of the two actions here will not necessarily conflict, this factor does not support abstention.

Fourth, the state action preceded the federal action. Although this factor supports abstention, it is insufficient on its own to justify abstaining here.

Fifth, this case involves no unique issues of state law best resolved in state court. The breach of contract claims at issue here, while arising under state rather than federal law, implicate fairly routine questions that a federal court can capably answer. "[T]he presence of state law issues—especially issues relating to breach of contract—is not generally a valid justification for granting a stay under the *Colorado River* doctrine." *Intel Corp. v. Advanced Micro Devices*, *Inc.*, 12 F.3d 908, 915 (9th Cir. 1993); *see also Travelers Indem. Co.*, 914 F.2d at 1370 ("Since this case involves routine issues of state law—misrepresentation, breach of fiduciary duty, and breach of contract—which the district court is fully capable of deciding, there are no such 'rare circumstances' here.").

Sixth, the Utah state proceedings may not be able to provide adequate protection for Hukui Tech's interests. While the state action could allow Hukui Tech to recover from CDX, the Court

4

cannot be certain as those proceedings currently stand that they will permit vindication of Hukui Tech's rights as to Intelligent Solutions.[1] "[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes the granting of a stay." *Intel Corp.*, 12 F.3d at 913.

Seventh, and finally, Hukui Tech has not engaged in improper forum shopping by bringing this lawsuit in federal court. Plaintiffs are three related companies that are incorporated or operate in California while Intelligent Solutions is a Nevada-incorporated company that also operates in California. Plaintiffs allege that the key events relating to their dispute with Intelligent Solutions occurred in California and that witnesses are also located in California. Under these factual circumstances, and given the alleged presence of diversity jurisdiction, Plaintiffs' decision to file suit in California federal court does not raise any forum-shopping concerns.[2]

In sum, only the fourth factor favors abstention, and that factor alone is not enough to overcome the strong presumption in favor of this Court's exercise of its jurisdiction.

Citing *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989), Intelligent Solutions also argues that *Colorado River* abstention should apply because the federal and state court actions are "substantially similar" with the federal action being a "spin-off" of the state court action. *Nakash* involved a lawsuit between two clothing designers (Nakash and Marciano) that arose after Nakash purchased a portion of the brand Guess from Marciano. Marciano initially sued Nakash in California state court to have the purchase agreement rescinded, after which Nakash filed a state

---

[1] Intelligent Solutions states that it "does not object to jurisdiction in Utah," Dkt. No. 23, at 3, and the Court will presume that it would waive any statute-of-limitations defense if Hukui Tech were to join it as a defendant in the state action. Nonetheless, Intelligent Solutions' mere consent to be sued in Utah cannot *guarantee* that Hukui Tech will be able to pursue its claims against Intelligent Solutions in the state court proceedings, given that those proceedings have already been pending for several years without Intelligent Solutions' participation. *See Landes v. Capital City Bank*, 795 P.2d 1127, 1132 n.4 (Utah 1990) ("[Utah's] Rule 19(b) analysis involves questions of equity and therefore is committed to the discretion of the court.… [A] trial court has the discretion to proceed without the [purportedly indispensable] party.").

[2] This case is not like *American Int'l Underwriters*, in which the Ninth Circuit found forum shopping where a plaintiff first sued in state court but then "abandon[ed] its state court case [after two-and-a-half years] solely because it believe[d] that the Federal Rules of Evidence [were] more favorable to it than the state evidentiary rules." 843 F.2d at 1259. Unlike that plaintiff, Hukui Tech did not bring the initial state court action here. Rather, CDX brought an action against Hukui Tech in Utah state court, in response to which Hukui Tech countersued CDX.

court countercomplaint and then brought an action against Marciano in federal court alleging RICO and breach of contract claims. Though the state court action included additional corporate entities (such that the parties were not "identical" as between the suits), the Ninth Circuit stayed the federal litigation to avoid piecemeal litigation and because the majority of claims in the federal action were based in state law. *Id.* (noting that "exact parallelism" is not required). The present case, however, is readily distinguishable from *Nakash*. *Nakash* involved a dispute between two parties over one transaction and certain related "spin-off" claims between largely overlapping parties. By contrast, Hukui Tech's contractual dispute with Intelligent Solutions is legally distinct from its contractual dispute with CDX and not merely a "spin off" of the latter dispute.

Ultimately, *Colorado River* abstention is appropriate only in "exceptional circumstances." *O'Neill v. United States*, 50 F.3d 677, 688 (9th Cir. 1995). Intelligent Solutions has identified no such circumstances here.

## CONCLUSION

For the foregoing reasons, the Court denies Intelligent Solutions' motion to dismiss or stay this lawsuit.

**IT IS SO ORDERED.**

Dated: November 17, 2023

P. Casey Pitts
United States District Judge