UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HUKUI TECH, INC., et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>INTELLIGENT SOLUTIONS, LLC, et al.,<br><br>　　　　Defendants. | Case No. 5:23-cv-00991-PCP<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 73 |

Defendants Joseph Featherstone and Seth Egan move to dismiss, for lack of personal jurisdiction and improper venue, the lawsuit brought against them by plaintiffs Hukui Tech, Inc., Hukui Technology, Inc., and Hukui Bio Co., LTD. For the following reasons, the Court grants the motion to dismiss for lack of personal jurisdiction and does not reach the question of proper venue.

## BACKGROUND

Hukui Tech is a California-based corporation that provides import-export and distribution services in the medical devices industry. Defendant Intelligent Solutions is a Nevada-based company with offices in California that provides sales-lead and distribution services. Defendant Co-Diagnostics Inc. ("CDX") is a Utah-based medical-devices company that developed COVID-19 diagnostic tests. Defendant Joseph Featherstone is the head of business development at CDX, and defendant Seth Egan is the vice president of sales at CDX. Both Featherstone and Egan are residents of Utah.

This dispute arises from Hukui Tech's agreement with CDX to distribute COVID-19 tests. Hukui Tech and CDX entered into that distribution agreement in March 2020, early in the global COVID-19 pandemic. The agreement authorized Hukui Tech and its subsidiaries to sell and distribute CDX's COVID-19 tests. Dkt. No. 1-1, at 2. Hukui Tech thereafter entered into a

customer referral agreement with Intelligent Solutions, pursuant to which Intelligent Solutions would provide sales-lead services for Hukui Tech's distribution of CDX's COVID-19 tests. That agreement could only be terminated "by either Party upon 30 days written notice to the other party." Dkt. No. 1-3, at 3.

In CDX's view, its agreement with Hukui Tech required Hukui Tech to be the sole distributor of its COVID-19 tests and to refrain from contracting with other sub-distributors like Intelligent Solutions. Dkt. No. 24, at 6. CDX sued Hukui Tech in Utah state court in April 2021 seeking a declaration that it no longer had any contractual relationship with Hukui Tech. By that time, CDX had already begun distributing its tests directly through Intelligent Solutions. CDX argued that Hukui Tech had breached its distribution agreement by contracting with Intelligent Solutions, and that CDX was not liable to pay Hukui Tech for the COVID-19 tests that CDX sold thereafter. In response to CDX's lawsuit, Hukui Tech filed a countercomplaint alleging that CDX had breached its agreement with Hukui Tech by prematurely terminating their business relationship. Hukui Tech alleged that at least 750,000 COVID-19 tests were sold by CDX to Intelligent Solutions for $7 each rather than to Hukui Tech for $6 each (per the distribution agreement). Hukui Tech allegedly suffered $750,000 in damages due to CDX's breach of the agreement. On November 7, 2023, the Utah state court granted summary judgment against Hukui Tech and in favor of CDX. Dkt. No. 74-3.

In March 2023, plaintiffs filed this federal lawsuit alleging 10 contract-related claims against Intelligent Solutions and Joseph Sarro, the sole managing member of Intelligent Solutions. Dkt. No. 1. Plaintiffs allege that Intelligent Services interfered with Hukui Tech's initial distribution agreement with CDX and unlawfully profited from the unilateral sale of COVID-19 tests from CDX. A year later, in March 2024, plaintiffs filed their amended complaint adding defendants Featherstone and Egan and alleging that they acted outside their official roles at CDX to enrich themselves by inducing CDX and Intelligent Solutions to breach their contracts with Hukui Tech. Dkt. No. 59, at 16. Featherstone and Egan now move to dismiss, arguing that this Court lacks jurisdiction over them and that this District is an improper venue for the dispute. Dkt. No. 73.

**LEGAL STANDARDS**

Federal Rule 4(k)(1)(A) provides that, in the absence of a federal statute governing personal jurisdiction, "the district court applies the law of the state in which the district court sits." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Since "California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Id.* at 800–01.

In order for a court to exercise personal jurisdiction over a particular defendant, due process requires that the defendant have "minimum contacts" with the chosen forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (cleaned up). The "minimum contacts" required by due process depend upon whether a court is exercising general or specific jurisdiction.

General jurisdiction extends to all claims that might be asserted against a defendant and thus requires a substantial degree of contact with the forum. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "A court may assert general jurisdiction over foreign … corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* at 919. For corporations, the "paradigm" bases for general jurisdiction are "the place of incorporation and principal place of business," although operations in another state might also be "so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 139 n.19 (2014).

Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 352 (2021). For a court to exercise specific personal jurisdiction, the defendant must have "take[n] some act by which it purposefully avail[ed] itself of the privilege of conducting activities" in the forum state, and the claims "must arise out of or relate to the defendant's contacts with the forum." *Id.* (cleaned up). District courts in California apply a three-part test to determine whether they can exercise specific personal jurisdiction over a defendant: (1) the non-resident defendant must

3

1    purposefully direct its activities or consummate some transaction with the forum or resident
2    thereof, or perform some act by which it purposefully avails itself of the privilege of conducting
3    activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must
4    be one which arises out of or relates to the defendant's forum-related activities; and (3) the
5    exercise of jurisdiction must comport with fair play and substantial justice. *See, e.g.*, *Core-Vent*
6    *Corp. v. Nobel Indus., AB*, 11 F.3d 1482, 1485 (9th Cir. 1993). For purposes of the test's first part,
7    "availment and direction are, in fact, two distinct concepts," and whether a court applies the
8    purposeful availment or purposeful directiontest depends on the nature of the claim.
9    *Schwarzenegger*, 374 F.3d at 802. For tort claims, courts apply the purposeful direction test.
10   *Nichols v. Guidetoinsure, LLC*, No. 23-CV-04920-PCP, 2024 WL 1643701, at *2 (N.D. Cal. Apr.
11   15, 2024).

12        In opposing a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the
13   plaintiff has the burden to prove that the Court's exercise of personal jurisdiction over the moving
14   defendant is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). On such a motion,
15   the Court can consider evidence contained in affidavits and is not limited to the allegations of the
16   plaintiff's complaint. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

17                                                    **ANALYSIS**

18   **I.        The Court lacks general jurisdiction over Featherstone and Egan.**

19        For individuals, general jurisdiction usually applies to the forum in which they are
20   domiciled. *Goodyear*, 564 U.S. at 924. In exceptional circumstances courts may exercise general
21   jurisdiction outside that domicile because an "individual's contacts with the forum are 'so
22   substantial, continuous, and systematic that the defendant can be deemed to be present in that
23   forum for all purposes.'" *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 5:20-CV-
24   06846-EJD, 2021 WL 6049906, at *8 (N.D. Cal. Dec. 21, 2021) (quoting *Yahoo! Inc. v. La Ligue*
25   *Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006)). The individual must
26   be "essentially at home in the forum State." *Goodyear*, 564 U.S. at 919. "The standard for general
27   jurisdiction is an exacting standard, as it should be, because a finding of general jurisdiction
28   permits a defendant to be haled into court in the forum state to answer for any of its activities

anywhere in the world." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011).

Both Featherstone and Egan are domiciled in Utah, not California. Plaintiffs argue that the Court can nonetheless exercise general jurisdiction over Featherstone and Egan because they allegedly sold COVID-19 tests to California consumers; sold COVID-19 tests through Hukui Tech, a California-based distributor, and Intelligent Solutions, a distributor with offices in California; and attended or caused others to attend business conferences in California to serve the California market. Dkt. No. 80, at 7.

Such contacts are insufficient to establish general jurisdiction. Featherstone and Egan's alleged business dealings in California were not so substantial, continuous, and systematic as to make them essentially at home in the state. Courts "regularly have declined to find general jurisdiction even where the contacts were quite extensive." *Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993). In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, for example, the Supreme Court found that a company's purchase of more than $4 million worth of supplies from a Texas company and its dispatch of its staff to Texas for training were insufficient to support the exercise of general jurisdiction by a Texas court. 466 U.S. 408, 416–17 (1984). In *Cubbage v. Merchent*, the Ninth Circuit found that non-resident doctors' contacts with the State of California were insufficient to support the exercise of general jurisdiction by a district court sitting in California despite the doctors' significant number of patients in California, their use of California's medical insurance system, and their California telephone directory listing. 744 F.2d 665, 667–68 (9th Cir. 1984).

The bar for establishing general personal jurisdiction is high, and even regular, repeated commercial engagements with forum-state residents or in the forum state itself are inadequate, on their own, to clear it. *See Goodyear*, 564 U.S. at 927 (holding that sales and marketing of goods in a state may be grounds for specific jurisdiction but "do not warrant a determination that … the forum has *general* jurisdiction."); *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) ("[E]ngaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders.");

*Helicopteros*, 466 U.S. at 417 (stating that the Supreme Court "makes clear that purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction"). Plaintiffs' allegations regarding Featherstone and Egan's contacts with California fall well below this high standard, and the Court therefore cannot exercise general personal jurisdiction over these defendants.

**II.     The Court lacks specific jurisdiction over Featherstone and Egan.**

Although Featherstone and Egan are not subject to general personal jurisdiction in California, this Court could nonetheless exercise jurisdiction over the claims against them if they are subject to specific personal jurisdiction. For the reasons that follow, however, they are not.

Because plaintiffs sue Featherstone and Egan for tortiously inducing breach of contract, the Court must apply the purposeful direction test. This test requires the defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162–63 (9th Cir. 2023); *see also Picot v. Weston*, 780 F.3d 1206, 1214 (9th Cir. 2015).

In arguing that test is satisfied, plaintiffs identify several California-directed acts by Featherstone and Egan. Plaintiffs allege that Featherstone and Egan: (1) sold and shipped 2.3 million COVID-19 tests to Intelligent Solutions, which was physically doing business in California as a distributor to the California market; (2) knowingly entered into distribution agreements with Hukui Tech, a California distributor; (3) made additional shipments directly to end users in California; (4) solicited municipalities in California; (5) redirected profits contractually obligated to Hukui Tech, a California company, to themselves; (6) redirected profits earned from California sales to themselves; and (6) attended or caused others to attend business conferences in California. Dkt. No. 80, at 5–8.

The parties disagree about whether these acts are sufficient to establish that Featherstone and Egan personally and purposefully directed conduct at California.[1] The Court need not resolve

---

[1] Featherstone and Egan argue that these acts are insufficient to establish personal jurisdiction over them because they are acts taken by CDX, not Featherstone and Egan personally. Dkt. No. 82, at

6

that dispute, however, because even if the identified acts satisfy the "purposeful direction" requirement, they fail the separate requirement that the claim against the defendant arise out of or relate to the defendant's forum-related activities. *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (explaining that only "suit-related" conduct by the defendant can support a finding of specific personal jurisdiction); *see also Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 265 (2017) ("What is needed … is a connection between the forum and the specific claims at issue.").

Here, plaintiffs allege a claim of tortious interference against Featherstone and Egan, so the Court can exercise specific personal jurisdiction over that claim only if Featherstone and Egan's forum-directed conduct relates to that claim. Plaintiffs, however, have not alleged any specific California-directed actions that Featherstone and Egan took in allegedly inducing Intelligent Solutions to breach its contract with Hukui Tech.

Intelligent Solutions is based in Nevada and Featherstone and Egan live in Utah. Plaintiffs have not shown that any interaction between Intelligent Solutions and Featherstone and Egan connected to the claim took place outside of one of those two states, and Featherstone and Egan's California-directed conduct is far removed from any of the actions purportedly taken to induce Intelligent Solutions to breach its contract with plaintiffs. Plaintiffs have not alleged that the acts of selling and shipping COVID tests to California distributors and end users and attending conferences in California served to induce Intelligent Solution's alleged breach of contract. Mere knowledge that a third party in California would be affected by their tort is insufficient on its own to render Featherstone and Egan subject to specific personal jurisdiction in California. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 291 (2014) ("[T]he mere fact that [defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction."); *Bristol-Myers Squibb Co.*, 582 U.S. at 265 (quoting *Walden*, 571 U.S. at 286) ("[A] defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction.").

Following the hearing on Featherstone and Egan's motion to dismiss, plaintiffs sought to

---

6. While this argument may have merit, the Court need not address it to determine that it does not have personal jurisdiction.

strengthen their position by requesting judicial notice of the fact that Intelligent Solutions has admitted that it provides sales and lead services from offices in California. Dkt. No. 88 (citing an allegation in first amended complaint and Intelligent Solution's answer admitting that allegation). This belated submission, however, does not support this Court's exercise of specific personal jurisdiction over Featherstone and Egan.

First, plaintiffs' filing was procedurally improper because it was filed after the completion of briefing without advance permission and does not fall into any of the exceptions to that requirement set forth in Local Rule 7-3(d). As the parties alleging that this Court has jurisdiction over the asserted claims, plaintiffs had the burden to identify all supporting evidence in their opposition instead of attempting to address issues raised at the hearing through post-hearing submissions.

Second, even if the Court were to grant plaintiffs leave to submit a post-hearing filing and to take judicial notice of Intelligent Solutions's admission, plaintiffs would still not meet their burden to show, by a preponderance of the evidence, that Featherstone and Egan knew that they were reaching into California when they allegedly induced Intelligent Solutions to breach its contract with Hukui. The evidence of which plaintiffs seek judicial notice establishes only that Intelligent Solutions has admitted that it had offices in California at the time the complaint was filed. It is of course possible (1) that those same offices were in place at the time of Featherstone and Egan's purported inducement of a contract breach, (2) that Featherstone and Egan interacted with individuals in those offices in inducing that breach, and (3) that Featherstone and Egan were aware that those individuals were located in California. The material plaintiffs have provided, however, does not establish any of those additional facts, all of which would have to be shown for plaintiffs to establish a basis for this Court's exercise of specific personal jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court grants defendant Featherstone's and Egan's motion to dismiss the claim against them. The dismissal of plaintiffs' claims against Featherstone and Egan is without prejudice and without leave to amend.

**IT IS SO ORDERED.**

Dated: November 22, 2024

_____
P. Casey Pitts
United States District Judge